UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DEA ADAMS,

                Plaintiff,                          **MEMORANDUM AND ORDER**

            v.                                      21-CV-3956 (RPK) (LB)

CITY OF NEW YORK; NYPD 105TH
PRECINCT; NEW YORK CITY POLICE
COMMISSIONER, in her individual and official
capacity; NYPD 105TH PRECINCT CAPTAIN
IGOR PINKHASOV; NYPD OFFICER
INSIGNARES; NYPD OFFICER KENNEDY;
NYPD OFFICER BARBIERI; NYPD OFFICER
URSO; NYPD OFFICER DUNPKY; NYPD
OFFICER MCDERMOTT; NYPD OFFICER
HESLIN; JOHN DOE OFFICERS 1-5; and
ALBERT BASALMASHHADI,

                Defendants.
----------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       *Pro se* plaintiff Dea Adams brings this action alleging violations of 42 U.S.C. § 1983 and the New York State Constitution in connection with a property dispute and an arrest. She names as defendants the City of New York, the 105th Precinct of the New York City Police Department ("NYPD"), and nine officers or officials of the NYPD: the Commissioner of the NYPD, Captain Igor Pinkhasov, Officer Insignares, Officer Kennedy, Officer Barbieri, Officer Urso, Officer Dunpky, and Officer McDermott (the "Named Officer Defendants"). She also names as defendants five unnamed NYPD officers, and a private party, Albert Basalmashhadi. The City of New York, 105th Precinct, and Named Officer Defendants (the "Moving Defendants") have filed a motion to dismiss based on inadequate service and failure to state a claim. As explained below, the Moving Defendants were properly served. But the motion to dismiss for failure to state a claim is granted in part. Plaintiff's false-arrest claims are dismissed with respect to all of the Named

1

Officer Defendants except Officer Heslin.  Plaintiff's conspiracy, failure-to-intervene, and *Monell* claims, as well as her claims against the NYPD 105th Precinct, are also dismissed.

## BACKGROUND

The following facts are taken from the operative complaint and are assumed true for the purposes of this order.

This lawsuit centers on a dispute over a property where plaintiff lived, at 221-16 Murdock Avenue in Queens Village, New York (the "Property").  Am. Compl. ¶ 16 (Dkt. #17).  On May 25, 2021, plaintiff found that the Property had been "broken into." *Id.* ¶ 19.  That same day, defendant Albert Basalmashhadi notified plaintiff that he had purchased the Property.  *Id.* ¶ 20.  A few days later, Basalmashhadi "admitted [to plaintiff] that he [had] trespassed . . . and hired the persons who vandalized" the Property on May 25.  *Id.* ¶¶ 20–22.  According to plaintiff, Basalmashhadi then bragged "how he [would] use his connections at the 105th Precinct to forcibly throw [plaintiff] out." *Id.* ¶ 23.

On June 2, 2021, Basalmashhadi and associates of his again entered the Property and removed various items and fixtures.  *Id.* ¶ 26.  Plaintiff and Basalmashhadi both called the police.  *Ibid.*  Upon their arrival, police officers reviewed plaintiff's "deed, [] water bill, and [] electric bill," but allegedly believed Basalmashhadi owned the Property, "took [his] side," and began to "forcibly [make plaintiff] vacate the premises." *Id.* ¶ 28.  According to plaintiff, when she tried to protest, NYPD Officer Insignares yelled that "'you will be arrested and forcibly removed from the property because the real owner [Basalmashhadi] does not want you there.'"  *Id.* ¶¶ 30–32 (capitalization altered).  When plaintiff sought to explain her position further to officers at the scene, "they were bragging that the captain of their precinct wanted [plaintiff] out of the house by

2

force." *Id*. ¶ 34. "After causing much destruction and mayhem," Basalmashhadi and his associates left the location. *Id*. ¶ 35.

Basalmashhadi and his associates returned the next day, June 3, 2021, and threatened to call the police if plaintiff did not let them inside the Property. *Id*. ¶ 37. Plaintiff called the police and, when unnamed officers arrived, they "basically did nothing and refused to give [her] a [police] report." *Id*. ¶ 39.

Basalmashhadi's associates returned once more on June 4, 2021, this time accompanied by unnamed police officers. *Id*. ¶¶ 44–45. The officers requested plaintiff's evidence of her ownership of the Property. *Id*. ¶ 46. Plaintiff again provided her deed and water bill. *Ibid*. An unnamed officer allegedly took this documentation and then drove with a Spanish-speaking associate of Basalmashhadi "down the block," to meet Basalmashhadi and NYPD Officer Jackson (who is not named as a defendant in this action). *Id*. ¶ 47. Plaintiff alleges that the unnamed officer translated certain statements by Basalmashhadi's Spanish-speaking associate. *Ibid*. Plaintiff alleges that on that day, Basalmashhadi "bragged that he knew the Captain at the 105th precinct and [would] make sure that he put the law into his own hands and ruthlessly deal[t] with Plaintiff." *Id*. ¶ 48. The police officers allegedly told plaintiff "to call them back if [Basalmashhadi] comes back to harass[] or threaten [plaintiff]," and told Basalmashhadi "to 'beat it.'" *Id*. ¶ 49.

Plaintiff further alleges that Basalmashhadi, "aided by his hired help from the 105th precinct and mercenary thugs, proceeded to rip off and destroy landscaping, removed toilets, entire kitchen cabinets, appliances and other property that belong to my family." *Id*. ¶ 50. Plaintiff called additional unnamed police officers to the scene to "put a stop to the looting and vandalism." *Ibid*.

3

Instead, these additional officers from the 105th Precinct told plaintiff "they [could] evict her . . . and did not care about whatever the law said." *Id*. ¶ 52.

Plaintiff states that Basalmashhadi and his contractors, aided by unnamed officers from the 105th Precinct, continued to "invade and vandalize the property" for days until, on June 16, 2021, plaintiff was arrested by Officer Heslin "without probable cause." *Id*. ¶¶ 11, 53–54.

Plaintiff filed her original complaint in this lawsuit on July 13, 2021, *see* Compl. (Dkt. #1), and the operative amended complaint on December 12, 2021, *see* Am. Compl. The amended complaint asserts, against all defendants, (i) claims for unreasonable-search, due-process, false-arrest, failure to intervene, and conspiracy under 42 U.S.C. § 1983, *see* Am. Compl. ¶¶ 62–80, and (ii) violations of Article I, Sections Five, Six, and Twelve of the New York Constitution, *see id*. ¶¶ 81–85. Plaintiff seeks actual and punitive damages. *See id*. ¶ 3.

The Moving Defendants have filed a motion to dismiss, arguing that they were improperly served with the Amended Complaint and that plaintiff has failed to state a claim. *See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss (Dkt #26) ("Defs.' Mem."); Moving Defs.' Letter (Dkt. #23).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(5) "provides for dismissal of an action if service of process was not timely effected in accordance with Federal Rule of Civil Procedure 4(m)." *George v. Prof'l Disposables Int'l, Inc*., 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016) (citation omitted). Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed," the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint

4

must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)) (quotation marks omitted). In contrast, a complaint fails to state a plausible claim when, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or when, as a matter of fact, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679.

When a plaintiff proceeds *pro se*, her complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

## DISCUSSION

The motion to dismiss is granted in part and denied in part. Plaintiff properly served the Moving Defendants, and she has adequately pleaded a claim of false arrest against Officer Heslin. However, plaintiff has not adequately pleaded false-arrest claims against the other Named Officer Defendants. Nor has she adequately pleaded claims against any of the Named Officer Defendants for conspiracy and failure-to-intervene. Those claims are dismissed. As explained below, plaintiff's claims against the 105th Precinct and her claim under Section 1983 against the City of New York are also dismissed.

**I.     Plaintiff Properly Served The Amended Complaint Under Rule 5.**

The Moving Defendants' motion to dismiss based on improper service is denied.

To establish personal jurisdiction, Federal Rule of Civil Procedure 4 authorizes several methods of initial service of a summons and complaint. *Shum v. JILI Inc.*, 17-CV-7600 (RPK)

(VMS), 2022 WL 17403608, at *2 (E.D.N.Y. Dec. 2, 2022). "[S]ervice of the summons is the procedure by which a court . . . asserts jurisdiction over the person of the party to be served." *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946); *see Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999). Rule 5 governs service of pleadings after proper service of the original complaint, and provides that such later pleadings may be served "by sending [them] to a registered user by filing [them] with the court's electronic filing system." *Shum*, 2022 WL 17403608, at *2 (quoting Fed. R. Civ. P. 5(b)(2)(E)) (quotation marks omitted). Under this Rule, "service is complete upon filing . . . but is not effective if the filer . . . learns that it did not reach the person to be served." Fed. R. Civ. P. 5(b)(2)(F).

Plaintiff properly served the Moving Defendants under these principles. The Moving Defendants concede they were properly served with the original complaint under Federal Rule of Civil Procedure 4. *See* Defs.' Mem. 8. Because the Court obtained personal jurisdiction over defendants through plaintiff's proper Rule 4 service of the original complaint, *see* Summons Returned Executed (Dkt. #22), plaintiff was entitled to rely on Rule 5 for service of her amended complaint via electronic court filing ("ECF").

The Moving Defendants are mistaken in arguing that plaintiff was required to serve them with the amended complaint through the procedures specified in Rule 4, rather than through ECF. Defendants cite *Kucher v. Alternative Treatment Ctr. of Paterson, LLC*, as supporting the proposition that "[p]roper service of the Original Complaint does not excuse failure to serve the Amended Complaint." No. 05-CV-3733 (SJ) (JMA), 2009 WL 1044626, at *10 (E.D.N.Y. Mar. 27, 2009), *report and recommendation adopted*, 2009 WL 1045989 (E.D.N.Y. Apr. 20, 2009); Defs.' Mem. 8. But *Kucher* is inapposite because that plaintiff was seeking default judgments against certain non-appearing defendants, and Rule 5(a)(2) expressly provides that "a

6

pleading that asserts a new claim for relief against . . . a party [who is in default for failing to appear] must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2). As the defendants here are not in default, Rule 5(a)(2) does not apply. Instead, Rule 5(b)(2)(E)—allowing service by ECF filings of later pleadings—governs. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d Cir. 1977) (explaining that an "original complaint is not superseded until the amended complaint is served . . . , at least where . . . the amended complaint is required to be served under Rule 5(a)"); *see, e.g.*, *Allstate Ins. Co. v. Yadgarov*, No. 11-CV-6187 (PKC) (VMS), 2014 WL 860019, at *6 (E.D.N.Y. Mar. 5, 2014) (applying Rule 5(a)(2) in the default judgment setting); *Badalamenti v. Country Imported Car Corp.*, No. 10-CV-4993 (SJF) (GRB), 2012 WL 601481, at *1 (E.D.N.Y. Feb. 22, 2012) (similar). Accordingly, there is no defect in service of the Amended Complaint.

## II.  The Motion To Dismiss Is Granted In Part And Denied In Part As To Plaintiff's False-Arrest Claims.

The motion to dismiss plaintiff's false-arrest claims under Section 1983 is denied with respect to Officer Heslin, but granted with respect to the eight remaining NYPD officers named in the complaint—the New York City Police Commissioner in her individual capacity,[1] NYPD Captain Igor Pinkhasov, NYPD Officer Insignares, NYPD Officer Kennedy, NYPD Officer Barbieri, NYPD Officer Urso, NYPD Officer Dunpky, and NYPD Officer McDermott.

### A.  The Motion Is Denied with Respect to Officer Heslin.

Defendants' motion to dismiss is denied with respect to plaintiff's claims of false arrest in violation of the Fourth Amendment under Section 1983 against Officer Heslin.

---

[1] Plaintiff states that she is suing the Police Commissioner in both her individual and official capacities, but because plaintiff seeks money damages, any official capacity claims are barred by sovereign immunity. *See KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013); *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

7

Under the Fourth Amendment, "[t]he elements of a false arrest . . . claim are that (1) a 'defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (describing the elements of a Fourth Amendment false-arrest claim). An arrest is privileged if "the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Martinez v. City of New York*, 340 F. App'x 700, 701 (2d Cir. 2009) (quotation marks and brackets omitted). And, under the collective knowledge doctrine, "an arrest . . . is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause . . . but sufficient information to justify the arrest . . . was known by other law enforcement officials initiating or involved with the investigation." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (quoting *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001)).

Qualified immunity shields officers from liability for false arrest under Section 1983 so long as "arguable probable cause" existed "to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016). Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met." *Id*. at 633 (quotation marks omitted) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "[T]he defense of qualified

8

immunity [generally] cannot support the grant of a Rule 12(b)(6) motion . . . [unless] 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 41–42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)).

Plaintiff has adequately pleaded false arrest against Officer Heslin. She asserts that Officer Heslin personally arrested her on the Property "without probable cause[] or reasonable suspicion that she had committed any crime." Am. Compl. ¶¶ 11, 55. And she describes precipitating events in which, despite providing the officers with evidence that she owned the Property, *id*. ¶¶ 11, 27–28, 55, the officers nevertheless "told [p]laintiff that they can evict her . . . and did not care about whatever the law said," *id*. ¶ 52; *see id*. ¶¶ 33, 46, ordered plaintiff to leave the Property, *id*. ¶¶ 28, 32, 52, and ultimately arrested her, *id*. ¶¶ 54–55. Construing plaintiff's complaint liberally in light of plaintiff's *pro se* status, the complaint plausibly alleges false arrest.

While defendants assert that plaintiff's arrest was supported by at least arguable probable cause to believe she was trespassing on the Property, that question is not properly decided on the limited record at the motion-to-dismiss stage. Under New York law, "[a] person is guilty of trespass when [s]he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05. To have probable cause for this offense, "officers [must] have reasonable grounds to believe that someone was neither a resident [of] nor an invited guest" on the Property. *Greene v. Bryan*, No. 15-CV-249 (ARR) (RER), 2018 WL 3539811, at *11 (E.D.N.Y. July 23, 2018) (citation omitted). Defendants first argue that Officer Heslin had probable cause because various extrinsic documents—like records from a civil case in state court and property records attached to defendants' motion—establish that plaintiff did not actually own the Property. Defs.' Mem. 14–16. But the motion-to-dismiss record does not reflect that those documents were known to Officer Heslin at the time of plaintiff's arrest. Accordingly, even assuming that those documents could be

9

the subject of judicial notice, they do not establish that a reasonable officer with the information known to Officer Heslin would have believed plaintiff was not lawfully present at the Property. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

Defendants alternatively suggest that Officer Heslin had at least arguable probable cause to believe that plaintiff was trespassing "based on the complaints of Defendant Basalmashhadi, the putative victim of Plaintiff's trespass[,]" or because officers relied on "Mr. Basalmashhadi's deed." Defs.' Mem. 17; *see id.* at 20. Officers may generally rely on accounts of witnesses in determining whether probable cause exists. *See, e.g.*, *Bernard v. United States*, 25 F.3d 98, 102–03 (2d Cir. 1994). But the amended complaint does not allege that Basalmashhadi told officers that he was the rightful owner of the Property, or that he showed officers his deed. Because the complaint does not reflect the substance of Basalmashhadi's statements to officers (or allege that any officers actually reviewed Basalmashhadi's deed), these factual assertions are not an appropriate basis for dismissal under Rule 12(b)(6).

### B. The Motion Is Granted as to All the Other Named Officers.

Plaintiff fails to state claims under Section 1983 against any of the Named Officer Defendants other than Officer Heslin, because plaintiff does not plausibly allege those officers' personal involvement in any alleged constitutional violation. *See* Am. Compl. ¶¶ 62–67.

To be liable for a constitutional violation under Section 1983, a defendant must have "personal involvement . . . in [the] alleged constitutional deprivations." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quotations marks omitted). But other than Officer Heslin, who plaintiff alleges was the arresting officer, plaintiff fails to plead that any of the officer-defendants were

10

personally involved in unconstitutional conduct. *See* Am. Compl. ¶¶ 11, 54–55, 62–76. Instead, the amended complaint principally relies on allegations as to "defendants" generally, stating that "[o]n June 16, [2021] . . . [p]laintiff was falsely arrested and imprisoned by defendants under color of law and authority . . . without probable cause, or reasonable suspicion that she had committed any crime," *id*. ¶¶ 54–55, and that "[t]he individual officers . . . failed to intervene in the obviously illegal actions of their fellow officers against plaintiff," *id*. ¶ 58.

A complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct" fails to adequately state a claim because it does not give each defendant notice of their alleged conduct on which the claim rests. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). Accordingly, courts in this circuit routinely find that group pleading akin to plaintiff's is insufficient to allege the personal involvement necessary for Section 1983 liability. *See, e.g.*, *Jeffery v. City of New York*, 20-CV-2843 (NGG) (RML), 2022 WL 204233, at *4 (E.D.N.Y. Jan. 24, 2022), *certificate of appealability denied*, 2022 WL 2704760 (E.D.N.Y. July 12, 2022) (finding a complaint failed to state a claim because the "undifferentiated group pleadings . . . [were] inadequate to allege either direct participation or policy-making involvement"); *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598–99 (E.D.N.Y. 2017).[2]

### III.     Plaintiff's Claims of Section 1983 Conspiracy Are Dismissed.

Plaintiff fails to state a claim against the Named Officer Defendants for conspiring to violate her constitutional rights, in violation of Section 1983.

To state a Section 1983 conspiracy claim, a "plaintiff must allege: '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury;

---

[2] The one officer-specific fact plaintiff does allege about these officer-defendants—that Officer Insignares demanded that plaintiff leave the Property on June 2, 2021, *see* Am. Compl. ¶¶ 29–32—does not amount to a plausible allegation that Officer Insignares violated plaintiff's constitutional rights.

11

and (3) an overt act done in furtherance of that goal causing damages.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (citation omitted). A complaint alleging a Section 1983 claim must be dismissed when it contains "nothing more than vague and general allegations of conspiracy." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012) (citing *Ciambriello*, 292 F.3d at 324–25). Instead, "to survive a motion to dismiss," a plaintiff "must 'provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy.'" *Blue v. City of New York*, No. 16-CV-9990 (VSB), 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018) (citation omitted).

Plaintiff has not done so here. The amended complaint alleges that Basalmashhadi bragged that he "knew the Captain at the 105th precinct and will make sure that he put the law in his own hands," Am. Compl. ¶ 48, and that he said he would "use his connections at the 105th Precinct to forcibly throw [plaintiff] out," *id*. ¶ 23. But the complaint does not specify whether the Captain at the 105th Precinct referenced in these statements is Captain Pinkhasov—who is named as a defendant—or another individual. And even if these statements were construed as referring to Captain Pinkhasov, alleged statements by Basalmashhadi suggesting that he had connections to Captain Pinkhasov that he intended to use for his own purposes do not support an inference that Captain Pinkhasov was part of an illegal agreement to violate plaintiff's constitutional rights.

Beyond this, plaintiff makes a general allegation that "Basalmashhadi hired Officers from the 105th Precinct to help him." Am. Compl. ¶ 18. But plaintiff does not identify the individuals who Basalmashhadi allegedly hired or put forward any facts that support an inference that any unlawful agreement with these individuals existed.

12

Plaintiff also asserts that "[t]he Police Officers clearly were in cahoots with" Basalmashhadi because "these Officers drove" an individual associated with Basalmashhadi (identified as "a female who said she was the contractor['s] wife") to plaintiff's house and then to another location to meet Basalmashhadi and another police officer, who translated for Basalmashhadi's associate. *Id.* ¶ 47. But the complaint does not indicate that any of the officer-defendants were involved in this interaction. *See ibid.* (discussing a "male Police Officer who did the translation," but not identifying that officer, and an "Officer Jackson," who is not named as a defendant). And in any event, these allegations regarding the officers' actions are insufficient to suggest any illegal agreement on the part of the officer-defendants. *See, e.g.*, *De'Bey v. City of New York*, No. 20-CV-1034 (PGG) (SLC), 2021 WL 8013765, at *14 (S.D.N.Y. Oct. 26, 2021), ("[Plaintiff] fails to allege any objective factual basis from which the Court can properly infer a meeting of the minds among the individuals who were involved in the alleged constitutional violations, and as a result, [his] conspiracy claims 'must be dismissed.'") (citation omitted), *report and recommendation adopted*, 2022 WL 909790 (S.D.N.Y. Mar. 29, 2022).

Plaintiff's Section 1983 conspiracy claim against the Named Officer Defendants is accordingly dismissed.

### IV. Plaintiff's Failure-to-Intervene Claims Against the Named Officer Defendants Are Also Dismissed.

Plaintiff's failure-to-intervene claims against the Named Officer Defendants are dismissed as inadequately pleaded. Plaintiff alleges only that "[d]efendants . . . failed to intervene in each other's obviously illegal actions." Am. Compl. ¶¶ 65–66. As discussed, *see* pp. 10–11, *supra*, a complaint must plead sufficiently specific allegations such that each defendant has notice of what they are alleged to have impermissibly done. "Simply put, the allegations against [the officer-defendants] lack the specificity required to withstand a motion to dismiss." *Isaac v. City of New*

13

*York*, No. 16-CV-4729 (KAM), 2018 WL 5020173, at *14 (E.D.N.Y. Aug. 6, 2018) (citation and quotation marks omitted), *report and recommendation adopted*, 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018).

V. **Plaintiff's Claims against the 105th Precinct Are Dismissed Because the Precinct Is Not a Suable Entity.**

Plaintiff's claims again the NYPD's 105th Precinct are dismissed because "[u]nder New York Law, '[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.'" *Johnson v. New York City Police Dep't*, 651 F. App'x 58, 60 (2d Cir. 2016) (citing N.Y.C. Charter Ch. 17). Accordingly, the NYPD and its precincts are not suable entities. *See, e.g.*, *Fludd v. Marroquin*, No. 19-CV-4919 (MKB), 2019 WL 6498164, at *2 (E.D.N.Y. Nov. 30, 2019) (collecting cases).

VI. **Plaintiff's Claim Under Section 1983 Against New York City Is Dismissed.**

Plaintiff's Section 1983 claims against New York City, *see* Am. Compl. ¶ 69, are dismissed because plaintiff fails to sufficiently allege the existence of a municipal policy that caused her constitutional injuries. Municipalities such as New York City are "not vicariously liable under [Section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted). Instead, they can be held liable under Section 1983 only if an "action pursuant to official municipal policy of some nature" caused the alleged deprivation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see Connick*, 563 U.S. at 60–61. A plaintiff who seeks to hold a municipality liable under Section 1983 must allege (i) "an official policy or custom," that (ii) "cause[d] the plaintiff to be subjected to," (iii) a "denial" of a federally guaranteed right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff can allege a municipal policy or custom by pointing to "decisions of a government's lawmakers,

14

the acts of its policymaking officials, . . . practices so persistent and widespread as to practically have the force of law" or, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Connick*, 563 U.S. at 61 (citations omitted).  Mere conclusory allegations that a policy, custom, or practice has led to a violation are insufficient to support a Section 1983 claim.  *See Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990).

Plaintiff alleges that the City "created a policy or custom under which unconstitutional practices occurred and . . . [has] been grossly negligent in managing subordinates who caused the unlawful condition or event," and that the City has "been alerted to the regular use of . . . false arrests by its police officers."  Am. Compl. ¶¶ 69, 70–71.  But plaintiff does not point to any specific City policy or custom or identify any specific instances of past unconstitutional conduct by police officers.  Without "any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused" her alleged false arrest, *Lozada v. City of New York*, No. 12-CV-0038 (ILG) (JMA), 2013 WL 3934998, at *7 (E.D.N.Y. July 29, 2013), plaintiff's allegations fall "far short of establishing a practice that is so persistent and widespread as to justify the imposition of municipal liability," *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009); *see, e.g.*, *Rodriguez v. City of New York*, No. 10-CV-4404 (PAE), 2012 WL 234380, at *4 (S.D.N.Y. Jan. 24, 2012) (dismissing a Section 1983 claim against New York City because "[e]ven taking all allegations in the plaintiff's complaint as true, plaintiff alleges nothing that can be construed as a municipal policy or custom that led to the violation of his constitutional rights") (citing *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 76 (2d Cir. 2010)); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (dismissing plaintiff's *Monell* claims

because they consisted of "little more than vague, conclusory allegations that the Town permitted, tolerated, and covered up police abuses").

Plaintiff's Section 1983 claims against New York City are accordingly dismissed.

## CONCLUSION

The motion to dismiss is granted in part and denied in part. The motion to dismiss based on inadequate service is denied. Plaintiff's false-arrest claims are dismissed as to all Named Officer Defendants other than Officer Heslin. Plaintiff's conspiracy and failure-to-intervene claims against the Named Officer Defendants, her *Monell* claim against the City, and her claim against NYPD 105th Precinct are also dismissed.

Plaintiff may file a second amended complaint within 30 days of the date of this Order. The new complaint must be captioned "Second Amended Complaint" and shall bear the same docket number as this Order. Plaintiff is advised that the second amended complaint will replace her first amended complaint. All further proceedings are stayed for 30 days. If plaintiff does not file a second amended complaint within thirty days, the case will proceed against the remaining defendants.

SO ORDERED.

                                       */s/ Rachel Kovner*
                                       RACHEL P. KOVNER
                                       United States District Judge

Dated:  March 31, 2023
        Brooklyn, New York