```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DEA ADAMS,

                        Plaintiff,                          MEMORANDUM AND ORDER
                                                            1:21-CV-3956 (RPK) (LB)
            v.

CITY OF NEW YORK; NYPD 105TH
PRECINCT; NEW YORK CITY POLICE
COMMISSIONER, in her individual and official
capacity; NYPD 105TH PRECINCT CAPTAIN
IGOR PINKHASOV; NYPD OFFICER
INSIGNARES; NYPD OFFICER KENNEDY;
NYPD OFFICER BARBIERI; NYPD OFFICER
URSO; NYPD OFFICER DUNPKY; NYPD
OFFICER MCDERMOTT; NYPD OFFICER
HESLIN; JOHN DOE OFFICERS 1-5; and
ALBERT BASALMASHHADI,

                        Defendants.
----------------------------------------------------------------x
```

RACHEL P. KOVNER, United States District Judge:

*Pro se* plaintiff Dea Adams brought this action under 42 U.S.C. § 1983 and the New York State Constitution in connection with a property dispute and an arrest. After the partial dismissal of plaintiff's amended complaint, plaintiff retained counsel and filed a motion seeking leave to file a second amended complaint. For the reasons explained below, plaintiff's motion is granted in part, and plaintiff may file an amended complaint alleging a false-arrest claim against defendant Officers Heslin and Joseph Palmese, a failure-to-intervene claim against Officer Heslin, and claims of conversion, abuse of process, and illegal eviction against defendant Albert Basalmashhadi. Leave to amend is denied with respect to plaintiff's additional claims because the proposed amendments would be futile.

## BACKGROUND

The following facts are assumed true for the purposes of this order.

1

I.      **Claims in Plaintiff's Lawsuit**

This lawsuit involves a dispute over a property, at 221-16 Murdock Avenue in Queens Village, New York (the "Property"), which plaintiff "continuous[ly] occup[ied]" and in which she "and her family maintained ownership and security interests . . . since 1972." Proposed Second Amended Complaint ¶¶ 11–12 (Dkt. 59-4) ("Proposed SAC"); First Amended Complaint ¶¶ 16–17 (Dkt. #17) ("FAC"). On May 25, 2021, plaintiff found that the Property had been "broken into" and "furniture had been . . . removed from the premises by [defendant Albert Basalmashhadi]." Proposed SAC ¶ 13. That same day, Basalmashhadi notified plaintiff that he had purchased the Property. *Id.* ¶¶ 14–15. According to plaintiff, Basalmashhadi then stated that "he would use his connections with the New York Police Department to throw [plaintiff] out of her residence," and that he "intended any means, including illegal, to forcibly remove [plaintiff]." *Id.* ¶¶ 16–17.

On June 2, 2021, Basalmashhadi and apparent associates of his entered the Property and removed various items and fixtures. *Id.* ¶ 19. Plaintiff and Basalmashhadi both called the police. *Id.* ¶¶ 20–21. Upon their arrival, police officers reviewed plaintiff's "deed, water bill, and electric bill," but allegedly believed Basalmashhadi owned the Property and "attempted to forcibly evict [plaintiff]." *Id.* ¶¶ 22–23.

Basalmashhadi and his associates returned on June 3, 2021 and "banged and kicked on the front door," but left after plaintiff "again called the police." *See id.* ¶ 24. Basalmashhadi's associates returned once more on June 4, 2021, this time accompanied by unnamed police officers who plaintiff recognized as having been present on June 2. *Id.* ¶¶ 25–26. The officers requested that Basalmashhadi leave the premises, and Basalmashhadi responded that "he would talk to the Captain at the precinct and take the law into his own hands to evict [plaintiff]." *Id.* ¶ 27.

Plaintiff further alleges that, on June 10, 2021, Basalmashhadi "filed a petition in Landlord Tenant court attempting to, *inter alia*, obtain legal possession of the [Property]," and that

2

Basalmashhadi continued "to invade and vandalize the property . . . [i]ncluding, but not limited to, bathroom fixtures, toilet[,] sink, etc." *Id.* ¶¶ 28–29.

On June 16, 2021, "approximately 20 police officers" arrived at the Property "because of [Basalmashhadi]." *Id.* ¶¶ 30–31. Officer Palmese told plaintiff "that the 'owner' of the house wanted to gain entry," and plaintiff "showed the officer the court documents, the water bill, and the deed." *Id.* ¶¶ 32–33. Officer Heslin "had been present" when plaintiff previously "showed the officers the documents, [and] the officers had deemed them sufficient." *Id.* ¶ 34. Officer Palmese then "ordered Officer Heslin to put cuffs on [plaintiff]." *Id.* ¶ 35.

## II.   Procedural History

Plaintiff filed her original complaint in this lawsuit on July 13, 2021, *see* Compl. (Dkt. #1), and an amended complaint on December 15, 2021, *see* FAC. The amended complaint named as defendants the City of New York, the 105th Precinct of the New York City Police Department ("NYPD"), nine named officers or officials of the NYPD (the "Named Officer Defendants"), five unnamed NYPD officers, and a private party, Albert Basalmashhadi. *Ibid.*[*] The amended complaint asserted, against all defendants, (1) claims for unreasonable search, due process, false arrest, failure to intervene, and conspiracy under Section 1983, *see id.* ¶¶ 62–80, and (2) violations of Article I, Sections Five, Six, and Twelve of the New York Constitution, *see id.* ¶¶ 81–85.

The City of New York, the 105th Precinct, and the Named Officer Defendants previously filed a motion to dismiss plaintiff's FAC that was granted in part and denied in part. *See Adams v. City of New York*, No. 21-CV-3956 (RPK), 2023 WL 2734611, at *1 (E.D.N.Y. Mar. 31, 2023). The Court dismissed, for failure to state a claim, plaintiff's false-arrest claims as to all Named Officer Defendants other than Officer Heslin, plaintiff's conspiracy and failure-to-intervene claims

---

[*] Plaintiff also asserted claims against the New York City Police Department, but the Court previously dismissed those claims for failure to serve. *See* Feb. 16, 2023 Order Dismissing Parties.

against all Named Officer Defendants, and plaintiff's claims against the City and the 105th Precinct. *Ibid.* The Court allowed plaintiff's false-arrest claim against Officer Heslin to proceed. *Ibid.* The Court granted plaintiff leave to amend by May 31, 2023, *see* May 1, 2023 Order, but she did not do so.

In August 2023, an attorney filed a notice of appearance on behalf of plaintiff. Later that month, plaintiff gave notice of her intention to move to amend the amended complaint. *See* Pl.'s Ltr. (Dkt. #53). The Court directed plaintiff to file her motion to amend by September 28, 2023, *see* Sept. 8, 2023 Minute Entry & Order, and, on that date, plaintiff served defendants with a motion seeking leave to amend, *see* Pl.'s Notice of Mot. for Leave to Amend (Dkt. #59); Pl.'s Mem. in Supp. (Dkt. #59-1), along with the Proposed SAC. *See also* Pl.'s Reply (Dkt. #62).

The Proposed SAC alleges substantially similar facts to those in the FAC, *compare* Proposed SAC ¶¶ 11–37, *with* FAC ¶¶ 16–59, but adds some claims and defendants. The Proposed SAC again contains a false-arrest claim under Section 1983 against Officer Heslin, it asserts a failure-to-intervene claim against five unnamed John Doe NYPD officers, and it reasserts the previously dismissed failure-to-intervene claim against Officer Heslin, *id.* ¶¶ 38–42, 69–72. In addition, the Proposed SAC adds a new defendant, NYPD Officer Palmese, to the false-arrest claim under Section 1983. *See id.* ¶¶ 38–42. The Proposed SAC also adds claims of malicious prosecution under both Section 1983 and New York state law against Officer Heslin, *id.* ¶¶ 43–62, and under New York law only against Basalmashhadi, *id.* ¶¶ 53–62. Finally, it adds new state-law claims against Basalmashhadi for conversion, abuse of process, and illegal eviction, *id.* ¶¶ 63–68, 73–76.

Defendants Basalmashhadi and Officer Heslin contend that leave to amend should be denied based on delay, Heslin's Opp'n 2–3 (Dkt. #61); Basalmashhadi's Opp'n 18–19 (Dkt. #60),

and because plaintiff's proposed amendments are futile, Heslin's Opp'n 3–8; Basalmashhadi's Opp'n at 7–18.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), a party may seek to amend its pleadings by leave of the court. "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Leave shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave is properly denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The party opposing the motion bears the burden of establishing that an amendment would be prejudicial or futile." *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 346 (E.D.N.Y. 2013). "[D]istrict judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, [but] leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (citation omitted).

A party seeking leave to amend after a court-imposed deadline, however, must not only satisfy Rule 15(a)(2), but also establish "the 'good cause' that is required to modify a scheduling order under [Federal Rule of Civil Procedure] 16(b)(4)." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)); *see Recio v. D'Almonte Enters. Parking Garage, Inc.*, No. 22-CV-6153 (RA) (GS), 2024 WL 1433710, at *4–5 (S.D.N.Y. Apr. 3, 2024) (noting that good cause applies even absent an amendment deadline in a Rule 16 scheduling order "where the record contains some indication

5

that the court and the parties understood that the pleadings would not be further amended" (citation omitted)); *Towner v. Cnty. of Tioga*, No. 15-CV-963 (GLS), 2018 WL 1157941, at *2 & n.5 (N.D.N.Y. Mar. 2, 2018) (noting that plaintiff would need to "demonstrate good cause" to amend the complaint after the deadline which was set upon the partial grant of defendant's motion to dismiss).

A proposed amendment is futile if it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). A proposed amended complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating futility, courts apply the ordinary Rule 12(b)(6) standard, "accept[ing] all factual allegations in the [proposed amended] complaint as true and draw[ing] all reasonable inferences in the plaintiff's favor." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 21 (2d Cir. 2015) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

## DISCUSSION

Plaintiff's motion for leave to amend is granted in part and denied in part. Defendants' arguments that leave to amend should be denied as timely lack merit, because plaintiff has shown good cause for her delayed filing and defendants have not demonstrated prejudice from the delay. Nevertheless, leave to amend is granted only as to plaintiff's proposed false-arrest claims against Officers Heslin and Palmese, her failure-to-intervene claim against Officer Heslin, and her claims of conversion, abuse of process, and illegal eviction against Basalmashhadi. Leave to amend is

6

denied with respect to the failure-to-intervene claim against the John Doe officers and the malicious-prosecution claims because amendment would be futile.

**I.      Plaintiff Has Shown Good Cause for Her Delay in Moving to Amend.**

Plaintiff has established good cause for the timing of the proposed SAC.

Whether good cause exists "depends on the diligence of the moving party to comply with the scheduling order." *General v. Ctr. for Disability Rts.*, No. 07-CV-6159, 2010 WL 3732198, at *2 (W.D.N.Y. Sept. 17, 2010); *see Parker*, 204 F.3d at 340. But the Court in its discretion may also consider other factors, such as whether amending the scheduling order will prejudice the other party. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007). "[T]he decision as to whether to let Rule 16(b) stand as a bar to amendment lies within the court's discretion." *Qanouni v. D&H Ladies Apparel LLC*, No. 18-CV-2763 (GBD), 2021 WL 9036182, at *8 (S.D.N.Y. Mar. 23, 2021); *see Parker*, 204 F.3d at 340.

Plaintiff has satisfied the good-cause standard. First, plaintiff showed reasonable diligence under the circumstances by filing the present motion soon after her counsel first appeared and just over two months after the deadline set by the Court. *See Dawson v. Pelican Mgmt., Inc.*, No. 11-CV-1753 (KAM) (LB), 2011 WL 5156596, at *2 (E.D.N.Y. Oct. 28, 2011) (finding good cause where deadline was exceeded by "over a month and a half" but "plaintiff exercised reasonable diligence by moving to amend as soon as she retained counsel to represent her in this action").

Second, defendants "ha[ve] identified no undue prejudice that would result from the amendment." *Spratt v. Verizon Commc'ns Inc.*, No. 11-CV-273 (AJN), 2012 WL 6629102, at *2 (S.D.N.Y. Dec. 20, 2012). "In gauging prejudice, [the Second Circuit] consider[s], among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo*, 514 F.3d at 192 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d

Cir. 1993)).  Undue prejudice is often present "when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" *Ibid.* (alteration in original) (citation omitted).

Defendants have not shown unfair prejudice here.  While defendants will have "to conduct discovery and defend[] this action," Basalmashhadi's Opp'n 18, these ordinary litigation burdens do not constitute undue prejudice in a case in which defendants never conducted discovery before amendment, and therefore "cannot claim that amendments would subject it to new and costly discovery demands or punish it for failing to anticipate shifting positions," *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 926 F. Supp. 2d 510, 518 (S.D.N.Y. 2013); *cf. A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) ("Allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'" (quoting *Block*, 988 F.2d at 351)).

Because discovery has yet to begin, defendants are mistaken to rely on several cases denying leave to amend due to prejudicial circumstances not present here, such as needing to re-open discovery or re-brief motions for summary judgment.  *See, e.g.*, *Parker*, 204 F.3d at 330 (noting that plaintiff's motion to amend did not occur until after receipt of defendants' motion for summary judgment); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (upholding finding of undue delay where plaintiff failed to file motion to amend until "three months prior to trial); *Rent-A-Ctr., Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 103–04 (S.D.N.Y. 2003); *Guity v. Uniondale Union Free Sch. Dist.*, No. 12-CV-1482 (SJF) (AKT), 2014 WL 795576, at *8 (E.D.N.Y. Feb. 27, 2014).

In sum, considering that plaintiff was "a *pro se* litigant" when her complaint was dismissed, that she filed her motion just months after the deadline set by the Court and shortly after counsel first appeared on plaintiff's behalf, and that "no undue prejudice [] would result from the

8

amendment," plaintiff has shown good cause for her delay in filing the present motion to amend. *See Spratt*, 2012 WL 6629102, at *2–3.

II. **Leave to Amend Is Granted in Part as to Plaintiff's False-Arrest and Failure-to-Intervene Claims.**

The proposed amendments to plaintiff's false-arrest claim are not contested aside from defendants' timeliness argument addressed *supra* page 7–9. *See generally* Heslin's Opp'n. But Officer Heslin does oppose plaintiff's failure-to-intervene claim against himself and the five John Doe NYPD officers. *Id.* at 3–5. That claim requires that each "officer . . . observe[] or ha[ve] reason to know that [plaintiff]'s constitutional right has been violated and [] ha[ve] a realistic opportunity to prevent the harm from occurring." *Brooks v. Cnty. of Nassau*, 54 F. Supp. 3d 254, 259–60 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). The Court previously dismissed the failure-to-intervene claim asserted in the FAC because the claim lacked the requisite specificity as to each defendant's personal involvement. *See Adams*, 2023 WL 2734611, at *5–6, *7. The Proposed SAC now adequately pleads a failure-to-intervene claim against Officer Heslin but remains deficient as to the John Doe officers.

A. **Amendment to plaintiff's failure-to-intervene claim against Officer Heslin would not be futile.**

The Proposed SAC adequately pleads a failure-to-intervene claim against Officer Heslin for the same reasons that it adequately pleads a false-arrest claim against him. *See id.* at *4–5. While plaintiff's failure-to-intervene claim against Officer Heslin would fail should he be found liable for false arrest, *see Brooks*, 54 F. Supp. 3d at 260, she "[is] permitted to plead [failure to intervene] in the alternative," *Rizk v. City of New York*, 462 F. Supp. 3d 203, 226 (E.D.N.Y. 2020); *accord Martinez v. City of New York*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021) (citing Fed. R. Civ. P. 8(d)(2), (3)). And the Proposed SAC properly does so here. *See* Proposed SAC ¶ 70

9

(asserting failure-to-intervene claim against Officer Heslin to the extent he "did not actively participate in the [] unlawful conduct" resulting in plaintiff's arrest).

### B. Amendment to plaintiff's failure-to-intervene claim against the John Doe officers would be futile.

Plaintiff fails to adequately plead a failure-to-intervene claim against the John Doe officers. The Proposed SAC alleges that "defendants [] were present" when plaintiff was arrested, *see* Proposed SAC ¶ 70, but it lacks any other specific facts suggesting that the John Doe officers were aware that plaintiff had presented documentation suggesting she lawfully resided at the Property or that those officers had a reasonable opportunity to prevent plaintiff's arrest. *See id.* ¶¶ 31–35, 70 (describing several officers as having "arrived" and being "present" for the arrest but only alleging that plaintiff presented documentation to, and was thereafter arrested by, Officers Heslin and Palmese); *Bouche v. City of Mount Vernon*, No. 11-CV-5246 (SAS), 2012 WL 987592, at *7 (S.D.N.Y. Mar. 23, 2012) (dismissing failure-to-intervene claim where only relevant allegation was that "[d]efendants had an affirmative duty to intervene on behalf of plaintiff [], whose constitutional rights were being violated in their presence by other officers" (first alteration in original)); *see also Corley v. Shahid*, 89 F. Supp. 3d 518, 523 (E.D.N.Y. 2015) ("[T]he mere fact that [an officer] was present for the entire incident does not, on its own, establish that he had either awareness of [the constitutional violation] or an opportunity to prevent it." (alterations in original) (citation omitted)).

Plaintiff's lone response is unavailing. Plaintiff argues that Officer Heslin lacks standing to oppose an amendment as it pertains to the John Doe officers. Pl.'s Reply 1–2. But whether Officer Heslin has standing to assert an argument on behalf of the John Doe officers is irrelevant where the Court has discretion to consider a question *sua sponte*. *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 292–93 (2d Cir. 2011). "It is 'within the sound discretion of the

10

district court to grant or deny leave to amend.'" *United Veterans Mem'l & Patriotic Ass'n of the City of New Rochelle v. City of New Rochelle*, 72 F. Supp. 3d 468, 478 (S.D.N.Y. 2014) (quoting *McCarthy*, 482 F.3d at 200), *aff'd*, 615 F. App'x 693 (2d Cir. 2015). And courts in this circuit often deny leave to amend *sua sponte* where amendment would be futile, especially where, as here, the plaintiff had already been granted leave to amend once before. *See Levantino v. Skala*, 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014) (denying "as futile the Plaintiff's cross motion to amend to the extent he seeks to assert any claims against John Doe"); *see also, e.g.*, *United Veterans*, 72 F. Supp. 3d at 487–79; *Payne v. Malemathew*, No. 09-CV-1634 (CS), 2011 WL 3043920, at *5–6 (S.D.N.Y. July 22, 2011).

### III. Leave to Amend by Adding Plaintiff's Malicious-Prosecution Claims Is Denied as Futile.

The Proposed SAC adds malicious prosecution claims under Section 1983 against Officer Heslin and under New York law against Officer Heslin and Basalmashhadi. *See* Proposed SAC ¶¶ 43–62. Adding those claims would be futile because the Proposed SAC fails to allege non-conclusory facts sufficient to support either a federal- or state-law malicious-prosecution claim.

"The elements of a malicious prosecution claim under New York law are (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (quotation marks and citation omitted). "[A] cause of action for malicious prosecution under § 1983" requires the additional element "that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Ibid.* (emphasis omitted).

11

Plaintiff's only allegations regarding a potential prosecution are that Baslamashhadi and Officer Heslin "commenced this criminal action out of malice" and that the "criminal action against [plaintiff] has terminated in her favor." Proposed SAC ¶¶ 56–57; *see also id.* ¶¶ 45–46. Plaintiff's "[t]hreadbare recitals of the elements of a [malicious prosecution] cause of action . . . do not suffice" to state a claim, *see Iqbal*, 556 U.S. at 678, especially as to the favorable-termination element. While "favorable termination," as relevant here, only requires that there be a prosecution which is dismissed "without a conviction," *Thompson v. Clark*, 596 U.S. 36, 47–49 (2022) (emphasis omitted), it remains a legal conclusion in support of which plaintiff fails to allege any specific facts. *See Iqbal*, 556 U.S. at 678–79 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). Without factual allegations suggesting plaintiff was prosecuted following her arrest or that such prosecution ended in a favorable manner as a matter of law, the Proposed SAC fails to state a claim for malicious prosecution. *See Callahan v. City of New Haven*, No. 21-CV-1069 (JAM), 2023 WL 1992620, at *6 (D. Conn. Feb. 14, 2023) (granting motion to dismiss *pro se* plaintiff's malicious prosecution claims for failure to plead favorable termination, "[e]ven under a liberal construction of [plaintiff's] pleading," because plaintiff "could not say what was the outcome of her arrest").

Even if plaintiff adequately pleaded favorable termination, the Proposed SAC still fails to state a malicious-prosecution claim against Officer Heslin. The Proposed SAC does not allege the post-arraignment liberty constraint required to state a federal claim under Section 1983. *See Rohman*, 215 F.3d at 215–16. And as plaintiff concedes, *see* Pl.'s Reply 2 n.1, the Proposed SAC fails to plead the filing of a notice of claim as required to plead a state claim under New York law, *see, e.g.*, *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 523 n.7 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19-CV-11265 (ATR), 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022).

12

Leave to amend to add malicious-prosecution claims against Basalmashhadi and Officer Heslin is therefore denied.

### IV. Leave to Amend Is Granted to Add Plaintiff's Remaining State-Law Claims Against Basalmashhadi.

The amendments adding plaintiff's remaining claims of conversion, abuse of process, and illegal eviction against Basalmashhadi would not be futile.

**A. Plaintiff's remaining claims against Basalmashhadi are not time barred.**

Plaintiff's claims of conversion, abuse of process, and illegal eviction against Basalmashhadi are timely despite the one-year statute of limitations, *see* Mem. in Supp. 3, because each claim relates back to plaintiff's timely FAC under Federal Rule of Civil Procedure 15(c).

When a plaintiff's amended complaint raises claims that would be time-barred without consideration of the original complaint, amendment is futile unless those claims "relate[] back to the date of the original pleading" by "ar[ising] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B). Under that rule, the "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014) (quoting *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006)). "[A] party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

Plaintiff's conversion, abuse-of-process, and illegal-eviction claims all satisfy the Rule 15(c) standard and are therefore not time-barred. The Proposed SAC "do[es] no more than state an alternative theory of recovery" against Basalmashhadi for the same series of events already

13

alleged in the FAC.  *See Foman*, 371 U.S. at 182; *Tiller v. Atl. Coast Line R. Co.*, 323 U.S. 574, 580–81 (1945); *see also, e.g.*, *Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir. 1994); *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 125–26 (2d Cir. 1994); *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 593–94 (S.D.N.Y. 2009).  To be sure, plaintiff's original claims against Basalmashhadi were brought under Section 1983, and may have been legally deficient because plaintiff did not plead that Basalmashhadi acted under the color of law.  *See* Basalmashhadi's Opp'n 5.  But neither the fact that plaintiff's new claims are brought under different statutes nor the fact that plaintiff's original claims may have been deficient establishes that plaintiff's new claims fail to relate back to the facts alleged in the FAC.  *See, e.g.*, *Foman*, 371 U.S. at 179, 182 (holding that the district court abused its discretion in denying plaintiff leave to amend to assert a *quantum meruit* claim when plaintiff's breach-of-contract claim had been dismissed based on statute of frauds).

Basalmashhadi mistakenly relies on two cases that are inapplicable here because both emphasized how the proposed amended complaint relied on facts that occurred well after those alleged in the original complaint.  *See Farmer v. Fzoad.com Enters. Inc.*, No. 17-CV-9300 (GBD), 2020 WL 6530787, at *9, *11 (S.D.N.Y. Aug. 5, 2020) (dismissing as time-barred claims resting on allegations of conduct after defendants fired plaintiff because the "original complaint did not allege any post-termination acts"), *report and recommendation adopted*, 2020 WL 5569581 (Sept. 17, 2020); *Grace v. Rosenstock*, 169 F.R.D. 473, 481 (E.D.N.Y. 1996) (dismissing as time-barred claims regarding "transactions that took place subsequent to, and in some cases years after, the events alleged in the original complaint"), *report and recommendation adopted*, 169 F.R.D. 486, *aff'd*, 228 F.3d 40 (2d Cir. 2000).  In contrast, here, plaintiff's claims arise out of the facts that were alleged in the timely FAC.

### B. Amendments adding plaintiff's remaining claims against Basalmashhadi would not otherwise be futile.

Plaintiff's amendments adding claims of conversion, abuse of process, and illegal eviction against Basalmashhadi would not be futile because the Proposed SAC adequately pleads those claims.

#### 1. Conversion

The Proposed SAC adequately pleads a conversion claim under New York law. "The elements of . . . conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 37 (S.D.N.Y. 2021) (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006)). The Proposed SAC adequately pleads a conversion claim. Plaintiff alleges that, on several occasions, Basalmashhadi forcibly removed plaintiff's personal property from plaintiff's residence despite her resistance, either by doing so himself or by directing others to do so. *See* Proposed SAC ¶¶ 19–22, 29, 64. The Proposed SAC describes the property taken from plaintiff's residence as various furniture, fixtures, and appliances including toilets, a sink, and cabinets. *See id.* ¶¶ 19, 29, 64.

Basalmashhadi errs in contending that plaintiff's pleadings are deficient because plaintiff does not allege conversion of a "specifically identifiable thing." *See* Basalmashhadi's Opp'n 16. Plaintiff's property descriptions plausibly allege that Basalmashadi removed tangible personal property belonging to her. *See Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) ("To establish a cause of action in conversion, . . . [t]angible personal property or specific money must be involved." (quotation marks and citation omitted)); *see also Hector v. Hector*, No. 22-CV-5990 (VB), 2023 WL 6038025, at *7 (S.D.N.Y. Sept. 15, 2023) (denying motion to dismiss as to conversion claim "comprised of specific, identifiable things" including "furniture"). Defendant's

15

arguments that plaintiff was required to plead her claims with greater specificity rely on inapposite case law addressing the conversion of money, rather than property. *See Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-CV-1376 (PKC), 2014 WL 4393320, at *21 (S.D.N.Y. Sept. 5, 2014); *Star Auto Sales of Queens LLC v. Iskander*, No. 19-CV-06791 (RPK), 2022 WL 784520, at *6 (E.D.N.Y. Mar. 15, 2022). In the context of conversion claims involving money, "additional requirements apply under New York law"—namely the need to identify a specific and distinct fund of money over which the defendant exercised unauthorized dominion. *Barnet*, 2014 WL 4393320, at *21.

Basalmashhadi is also mistaken in contending that plaintiff was required to allege that Basalmashhadi had refused a demand from plaintiff for the return of her property. *See* Basalmashhadi's Opp'n 16. "New York law does not . . . always require that a demand be made and be met by a refusal to make out a claim of conversion." *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 49 (2d Cir. 1996). Instead, "a demand is necessary only where the property is lawfully held by the defendant." *Ibid.* "But where the defendant . . . stole the property . . . no demand and refusal are necessary to render the defendant liable." *Ibid.* (internal quotation marks and citation omitted). Because the Proposed SAC alleges that Basalmashhadi stole the property in question, it need not separately allege a demand and refusal.

2. *Abuse of Process*

To adequately plead an abuse-of-process claim under New York Law, a plaintiff must plausibly allege "that the defendant (1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (citation omitted). "The crux of a

16

malicious abuse of process claim is the collateral objective element." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011). To adequately plead that element, a plaintiff must "claim that [defendants] aimed to achieve a collateral purpose beyond or in addition to [the plaintiff's] criminal prosecution." *Savino v. City of New York*, 331 F.3d 63, 77 (2003). "[A] malicious motive alone" is not sufficient to meet the collateral-objective requirement. *Ibid.* (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)).

Basalmashhadi's arguments for dismissal of plaintiff's abuse-of-process claim lack merit. Basalmashhadi suggests that plaintiff's "allegations that Basalmashhadi brought a criminal action against plaintiff" are insufficient to satisfy the first element. Basalmashhadi's Opp'n 17. But the complaint alleges that Basalmashhadi stated that he "intended any means, including illegal, to forcibly remove" plaintiff from the Property and threatened to use his alleged connections with the NYPD to do so, SAC ¶¶ 16, 18, 27, and that he twice called the police, including on the day of her arrest and removal from the Property, *id.* ¶¶ 21, 30–35. An arrest constitutes legal process for purposes of the first element. *Wagner v. Hyra*, 518 F. Supp. 3d 613, 630 (N.D.N.Y. 2021); *see also, e.g.*, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 616 (E.D.N.Y. 2017); *Goldring v. Zumo*, No. 14-CV-4861 (BMC), 2015 WL 148451, at *2–3 (E.D.N.Y. Jan. 12, 2015); *Pinter v. City of New York*, 976 F. Supp. 2d 539, 567–70 (S.D.N.Y. 2013). Plaintiff's allegations plausibly support the inference that Basalmashhadi maliciously procured plaintiff's arrest to unlawfully evict her, which is sufficient to state an abuse-of-process claim. *See TADCO Const. Corp. v. Dormitory Auth. of New York*, 700 F. Supp. 2d 253, 272 (E.D.N.Y. 2010) (denying motion to dismiss abuse-of-process claim predicated on "allegations that [defendant] had [plaintiff] arrested and charged with trespassing in order to intimidate and frustrate [plaintiffs] and thereby obtain an advantage over them in the ongoing contractual . . . dispute" (quotation marks omitted)); *see also, e.g.*,

17

*D'Amico v. Corr. Med. Care, Inc.*, 991 N.Y.S.2d 687, 692 (App. Div. 2014) ("[M]aking a false report to the police that results in the issuance of criminal process may support a claim for abuse of process."); *Reina v. Gonzales*, 119 N.Y.S.3d 705, at *1, *3 (Sup. Ct. Nov. 21, 2019) (denying motion for summary judgment where defendant "contacted the police" and allegedly "filed false criminal complaints" against plaintiffs because "a triable issue of fact remain[ed] as to whether [defendant] had an intent to do harm [plaintiffs] without excuse or justification"); *Orellana v. Macy's Retail Holdings, Inc.*, No. 453060/2015, 2016 WL 3455939, at *2, *5 (N.Y. Sup. Ct. June 24, 2016) (denying motion to dismiss and rejecting defendant's argument that "calling the police and making a criminal complaint is not 'process' that can be abused").

Defendant is also mistaken in contending that plaintiff has failed to allege any collateral objective for purposes of an abuse-of-process claim. Plaintiff alleges that Basalmashhadi sought to use legal process "to illegally evict" her, Proposed SAC ¶ 67, that Basalmashhadi told plaintiff "that he intended any means, including illegal, to forcibly remove [her] from the property," *id.* ¶ 18, and "that he would use his personal connections with the New York Police Department to throw her out of her residence," *id.* ¶ 16. These factual claims, taken together, amount to a plausible allegation that Basalmashhadi procured plaintiff's arrest for the purpose of dispossessing plaintiff of her residence outside of the civil eviction process—a collateral objective in the context of an abuse-of-process claim. *See, e.g.*, *TADCO*, 700 F. Supp. 2d at 272; *Smith v. Cnty. of Nassau*, No. 10-CV-4874 (MKB), 2015 WL 1507767, at *17 (E.D.N.Y. Mar. 31, 2015) ("By proffering evidence suggesting that [defendants] only prosecuted Plaintiff to conceal the fact that they were unlawfully removing her from the Property, Plaintiff has met [the collateral objective] element."), *aff'd*, 643 F. App'x 28 (2d Cir. 2016); *Del Col v. Rice*, No. 11-CV-5138 (MKB), 2012 WL 6589839, at *10 (E.D.N.Y. Dec. 18, 2012) (denying motion to dismiss abuse-of-process claim

18

where plaintiff alleged that defendants had plaintiffs arrested for extorting defendants over a patent for the "improper collateral purpose" of "gain[ing] control of [plaintiff]'s claim to the [] patent").

### 3. Illegal Eviction

The Proposed SAC adequately pleads an illegal-eviction claim under New York law. "To establish an illegal eviction claim, a plaintiff must show he was 'disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means.'" *Thomas v. City of New York*, No. 12-CV-5061 (FB), 2013 WL 3810217, at *7 (E.D.N.Y. July 23, 2013) (quoting N.Y. Real Prop. Acts. § 853); *accord Walls v. Giuliani*, 916 F. Supp. 214, 218 (E.D.N.Y. 1996).

Plaintiff has adequately pleaded a state-law illegal-eviction claim. The Proposed SAC alleges that plaintiff and her family "maintained an ownership and security interests in [the Property] since 1972," and that plaintiff "remained in continuous occupancy of the property until the date of her arrest." Proposed SAC ¶¶ 11–12. And as already discussed, the Proposed SAC alleges several facts that suggest Basalmashhadi had the police arrest plaintiff in order to dispossess her of her residence outside of the civil eviction process. *See id.* ¶¶ 16–18, 21, 25–27, 30–35. Basalmashhadi's only argument to the contrary is that the Proposed SAC does not describe an actual "eviction." Basalmashhadi's Opp'n 17. But use of an arrest to forcibly remove a person from real property, absent a warrant of eviction, exceeds the level of force that both federal and state courts have found sufficient to state a claim for illegal eviction. *See, e.g.*, *Collom v. Inc. Vill. of Freeport*, 691 F. Supp. 637, 641 (E.D.N.Y. 1988) (denying motion for summary judgment on wrongful eviction claim against police officer who threatened to arrest plaintiff because a reasonable jury could find "that the threat forced plaintiff to choose between vacating the premises and being arrested"); *Trec v. Cazares*, 128 N.Y.S.3d 251, 253–54 (App. Div. 2020) (denying

19

motion to dismiss wrongful eviction claim against property owner who "changed the locks on the door of the building[,] refused to provide keys to the plaintiff and permitted her entry . . . only in response to the plaintiff contacting the police"); *Moran v. Orth*, 828 N.Y.S.2d 516, 517 (App. Div. 2007) (holding that "the trial court improvidently exercised its discretion in failing to award treble damages" under N.Y. Real Prop. Acts. § 853 where defendant "locked [plaintiff] out of the premises for more than three months," "thr[ew] out some of [plaintiff]'s property," and "never secured a warrant of eviction").

## CONCLUSION

For the reasons stated above, plaintiff's motion for leave to amend the complaint is granted in part and denied in part. Plaintiff's amended false-arrest claim against Officers Heslin and Palmese, her amended failure-to-intervene claim against Officer Heslin, and her claims of conversion, abuse of process, and illegal eviction against Basalmashhadi may proceed. But the proposed amendments asserting failure-to-intervene claims against the John Doe officers and malicious-prosecution claims are denied as futile. Plaintiff is directed to serve and file the Proposed SAC as revised in accordance with this opinion within fourteen days of this Memorandum and Order.

SO ORDERED.

                                                          */s/ Rachel Kovner*
                                                          RACHEL P. KOVNER
                                                          United States District Judge

Dated: August 19, 2024
       Brooklyn, New York