**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

DEA ADAMS,

Plaintiff,

-against-

CITY OF NEW YORK, et al.,

Defendants.

---------------------------------------------------------x

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**

21-CV-03956 (CBA) (VMS)

**AMON, United States District Judge:**

Plaintiff Dea Adams brings this action alleging violations of 42 U.S.C. § 1983 against two New York City Police Department ("NYPD") officers. (ECF Docket Entry ("D.E.") # 64 ¶¶ 38-42, 49-52.) Both plaintiff Adams and police officer Defendants Daria Heslin and Joseph Palmese move for summary judgment on the false arrest claims.[1] (See D.E. ## 111 ("Def. Mot."); 112 ("Pl. Opp."); 113-1 ("Pl. Mot."); 114 ("Def. Opp.").) Heslin also moves for summary judgment on the failure to intervene claim.

For the following reasons, Defendants' motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED.

[1] Plaintiff seeks summary judgment only as to Palmese. (D.E. # 113 at 1).

**BACKGROUND**

In late May of 2021, Adams and Albert Basalmashhadi began aggressively disputing the ownership of the real property located at 221-16 Murdock Avenue in Queens, New York (the "home"). (D.E. # 118 at 1-3.)[2] According to Adams, the home was her "childhood home for years," and she lived there without interruption until her arrest in June of 2021.[3] (D.E. # 113-3 ("Adams Dep.") at 43:16, 44:6-20.) Her parents purchased the home, and at some point her father "put everything into a trust and appointed [her] the trustee." (Id. at 45:2, 46:1-8.) The home was foreclosed upon and sold "pursuant to a judgment of foreclosure and sale entered by the Supreme Court of the State of New York, Queens County, on November 20, 2019." (See D.E. # 110-1 (referee's deed)). Adams was aware of the foreclosure, although she implied that there was some confusion around those proceedings because "the pandemic hit, so everything was kind of out of whack." (Adams Dep. at 47:10-48:21.) Basalmashhadi and others purchased the home in the name of 26th Street Holding LLC on May 26, 2021. (D.E. # 110-1.) The next couple of weeks were marked by an escalating series of conflicts at the home, with Basalmashhadi's workers attempting to enter the home and Adams turning them away. (D.E. # 118 at 1-3; Adams Dep. at 57:1-58:19.) NYPD officers were called to the home multiple times. (D.E. # 118 at 2.)

Officer Palmese's involvement began "in late May or early June" when Basalmashhadi contacted Palmese's sergeant. (D.E. # 113-4 ("Palmese Dep.") at 15:9-16:4.) Palmese was then a "neighborhood coordination officer," which, he explained in his deposition, was a member of a unit "designed to deal with community complaints" who had a "little more time to investigate things." (Id. at 15:11-17.) Basalmashhadi informed Palmese's sergeant that "his company bought

---

[2] Record citations are to the page numbers of the underlying documents rather than to the ECF page numbers.
[3] As I explain in greater detail below, Plaintiff has offered contradictory accounts of her occupancy of the home.

a home" and that while "[t]hey were doing work . . . this woman randomly appeared at the house." (Id. at 15:24-16:4.) Palmese then conducted an investigation into the claim, which included running a New York City Automated City Register Information System ("ACRIS") search of the property records, contacting Basalmashhadi, speaking with the Department's legal team, asking other officers about the conflict, calling the water company, going to the home to knock on the door, and calling Adams (who did not answer). (Id. at 16:5-29:18; see also D.E. # 112-1 ¶¶ 2-8 (Plaintiff's responses to Defendants' Rule 56.1 statements).) He also reviewed documents provided by Basalmashhadi—including a notarized referee's deed to the property—and concluded that Basalmashhadi was the rightful owner of the home. (Palmese Dep. at 21:8-11, 23:16-18.)

On June 16, 2021, Palmese met Basalmashhadi down the street from the home because Basalmashhadi wanted to continue working on the home but was concerned that Adams might still be on the premises. (Id. at 29:25-30:11; Palmese Body Worn Camera ("BWC") I (showing this meeting).) During this meeting, Basalmashhadi once again showed Palmese the referee's deed for the property. (Palmese Dep. at 30:8-11; Palmese BWC I at 00:30-00:59.)

Palmese and several other officers then drove to the home. (Palmese BWC II at 00:45-01:07.) Palmese knocked on the door, but there was no answer. (Id. at 01:07-01:12.) About ten minutes later, Adams and another person arrived. (Id. at 10:24; Adams Dep. at 77:25-78:11; Palmese Dep. at 30:15-22.) In response to Palmese's statement that he knew "who the owner of the house is" based on "paperwork," Adams handed Palmese a stack of papers, saying, "here's the paperwork." (Palmese BWC II at 11:15-11:30; Adams Dep. at 78:24-79:22; Palmese Dep. at 31:3-5.) Eventually it became clear that the papers were related to a court hearing that had occurred earlier in the day. (Palmese BWC II at 11:52-14:30; Adams Dep. at 79:15-22; Palmese Dep. at 31:3-5.) Palmese called a number that Adams had written on the papers, which she claimed was

the number for "the court," but which turned out to be the number for Basalmashhadi's attorney. (Palmese BWC II at 14:15-20:36; Palmese Dep. at 31:5-13, 38:1-12.) That attorney told Palmese that "the court matter . . . was not resolved," (Palmese Dep. at 46:8-12), but made clear to Palmese that Adams did not have a right to be on the property, (Palmese BWC II at 19:19-19:40). Palmese then told Adams that she did not have a right to be on the property and that she needed to leave. (Palmese BWC II at 23:06, 23:36, 23:54.) Adams insisted that she was not trespassing, that she had "been [t]here for three weeks," and that the dispute over the home was a "civil matter." (Id. at 24:01-24:15.) When Adams refused to leave, she was arrested. (Id. at 28:54.) She was charged with criminal trespass in the third degree in violation of New York Penal Law § 140.10. (D.E. # 113-7 ("Arrest Report") at 1.)

## DISCUSSION

### A. General Standards

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "A fact is material when its resolution might affect the outcome of the suit under the governing law." McCrae v. Town of Brookhaven, 759 F. Supp. 3d 372, 385 (E.D.N.Y. 2024) (citations and internal quotation marks omitted). The evidence must be construed "in the light most favorable to the non-movant." Davis v. City of New York, 840 F. App'x 631, 633 (2d Cir. 2021).

"Under the Fourth Amendment, '[t]he elements of a false arrest . . . claim are that (1) a defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" (D.E. # 34 at 8 (opinion of Kovner, J.) (quoting Hernandez v. United States, 939 F.3d 191, 199 (2d Cir. 2019) (internal quotation marks omitted)).) "'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest' brought under Section 1983." Mitchell v. City of New York, 841 F.3d 72, 77 (2d Cir. 2016) (quoting Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007)). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Martinez v. City of New York, 340 F. App'x 700, 701 (2d Cir. 2009) (cleaned up) (quotation marks and citations omitted). And "[a]t the summary judgment stage, the question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers," but "where material facts on which such events and knowledge turn are disputed, summary judgment is not appropriate." McCrae, 759 F. Supp. 3d at 386 (internal citations and quotation marks omitted).

"Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Golino v. City of New Haven, 950 F.2d 864, 870

(2d Cir. 1991)). "The test for qualified immunity is more favorable to the officers than the one for probable cause." Watt v. City of New York, 22-CV-6841 (AMD) (JAM), 2026 WL 734482, at *7 (E.D.N.Y. Mar. 16, 2026) (internal quotation marks and citation omitted).

B. Palmese Had Probable Cause to Arrest Adams

"A person is guilty of criminal trespass in the third degree when [s]he knowingly enters or remains unlawfully in a building or upon real property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders . . . ." N.Y. Pen. L. § 140.10(a) (McKinney 2012). "A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises," where "enters or remains unlawfully" means being upon "premises when [s]he is not licensed or privileged to do so." N.Y. Pen. L. §§ 140.05, 140.00(5) (McKinney 2012).[4] "When a property owner confirms to a police officer that someone does not have permission or authority to be at the property, the officer has probable cause to arrest that person for criminal trespass." Watt, 2026 WL 734482, at *8 (citing Walston v. City of New York, 745 F. App'x 65, 66 (2d Cir. 2019)). That is because '"a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness . . . unless the circumstances raise doubt as to the person's veracity.'" Watt, 2026 WL 734482, at *8 (cleaned up) (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)). And although a police officer has a duty "to make further inquiry when a reasonable person" would do so, see McCrae, 759 F. Supp. 3d at 388 (quotation marks and citation omitted), when he is "confronted with different versions of events [he] is not charged with deciding who is ultimately right; his job is to determine whether there was probable cause to arrest," Watt, 2026 WL 734482, at *8.

[4] I explain the relevance of New York Penal Law § 140.05 below.

Palmese's conduct satisfied these standards.[5] After receiving a complaint from Basalmashhadi, Palmese initiated a thorough investigation, which included speaking with internal counsel, reviewing public records, calling the water company, visiting the home, attempting to contact Adams, and analyzing Basalmashhadi's documentation of ownership.

He weighed the results of his investigation carefully. There is some confusion about what Palmese saw on ACRIS. At the time of the arrest, he told his fellow officers that he "went to ACRIS" to support his conclusion that Adams "ha[d] no right to be" on the property. (Palmese BWC II at 24:14-16.) At his deposition, he was shown two versions of ACRIS, an outdated one that listed Adams as the property owner and one, dated June 8, 2021, that listed 26th Street Holding LLC—Palmese indicated that he had seen both versions. (Palmese Dep. at 53:12-54:14, 67:8-68:12; D.E. # 113-8.) Despite this ambiguity, it is undisputed that at the time of Adams's arrest, ACRIS would have listed 26th Street Holding LLC as the owner. (D.E. # 113-8.) Similarly, Palmese explained that, at some point, Adams had shown an officer a water bill in Adams's name, and although he did not personally "see the water bill," he did "call the water company," and was informed that a bill would not be dispositive of ownership because one "can get it changed easily." (Palmese Dep. at 24:11-25:11.) Ultimately, Palmese concluded that the referee's deed—which was notarized, dated May 26, 2021, explained the foreclosure proceeding, and transferred ownership of the home to 26th Street Holding LLC—was the strongest evidence of ownership. (Id. at 62:17-63:6.) Before taking any action, Palmese satisfied himself that Basalmashhadi was the property owner and that Adams did not have permission to be on the property. Thus, it was

[5] I have carefully reviewed the body camera footage and note for the record that Palmese's conduct on the scene was appropriate. Confronted with a property dispute and a high degree of hostility from Plaintiff, Palmese remained calm and professional. He gave Plaintiff multiple opportunities to present documentation that would have led to a different result, and multiple chances to leave the property without being arrested. That his professionalism has resulted in years of costly litigation is unfortunate.

only after determining that Basalmashhadi was "making a valid complaint . . . alleging a crime," (Palmese Dep. at 41:22-25), that Palmese effected the arrest.

No part of Palmese's investigation is genuinely disputed. (See D.E. # 112-1 at ¶¶ 2-8.) The only discrepancy between Adams's and Palmese's accounts is that Adams claims that after she gave Palmese a stack of court paperwork, she "presented the deed." (See Adams Dep. at 82:1-8.) Palmese denies that Adams ever showed him a deed. (Palmese Dep. at 79:1-13.) Were there no other evidence on the question, this might constitute a dispute of a material fact. But the body camera footage conclusively demonstrates that the only paperwork Adams presented to Palmese (or to any other officer) was the stack of court documents.[6] (See generally Palmese BWC II.) Given the thorough investigation into the "veracity" of a "putative victim['s]" complaint, Palmese had probable cause to arrest Adams for trespass. See N.Y. Pen. L. §§ 140.00(5), 140.05 (McKinney 2012); Watt, 2026 WL 734482, at *8 (quotation marks and citation omitted).

Adams's arguments to the contrary all fall short.

First, Adams argues that Palmese's investigation with regard to ownership is insufficient to prove probable cause because Palmese cannot establish that Adams "had not been living at the residence for thirty days or more" and was therefore not entitled to "certain statutory protections under [New York] law." (Pl. Opp. at 8.) But in determining probable cause, the relevant inquiry is the knowledge of the officers. See McCrae, 759 F. Supp. 3d at 386. Basalmashhadi can be heard on the body camera informing Palmese that, when he went to the home in late May, there was someone living there—but not Adams. (Palmese BWC I at 01:21-01:42.) This account is corroborated by a signed and notarized acknowledgement—which Basalmashhadi showed

[6] It is also noteworthy that no deed of Plaintiff's was attached to any of the motion papers as an exhibit.

Palmese—from one Kenneth Allen Steward, who accepted $6,000 to vacate the home. (Id. at 01:40-43; D.E. # 110-6 at 8.) And then, when she was confronted by officers at the home, Adams herself told Palmese that she had "been [t]here for three weeks," not thirty days.[7] (Palmese BWC II at 24:10.) Palmese was justified in crediting the information he received on the scene.

Second, Adams asserts that there was no probable cause to arrest her because she did not "physically commit the act of trespass on June 16, 2021." (Pl. Mot. at 8 (cleaned up).)

Adams makes much of the fact that the home is not "fenced," and therefore falls outside of the statute under which Adams was ultimately charged—New York Penal Law § 140.10. (Pl. Opp. at 5-6; Pl. Mot. at 8; D.E. # 113-9 (criminal complaint).) But as Defendants point out, Basalmashhadi's complaint was also that Adams had been inside the home without permission in obvious violation of that statute, which defines trespass in the third degree as "remain[ing] unlawfully in a building or real property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders." N.Y. Pen. L. § 140.10(a) (McKinney 2012); (see D.E. # 116 at 6). And Adams herself confirmed the veracity of this complaint, telling the officers that she had been in the home for "three weeks." (Palmese BWC II at 24:10.) Obviously, living in the home without permission constitutes "remaining unlawfully in a building" which is "enclosed in a manner designed to exclude intruders." N.Y. Pen. L. § 140.10(a) (McKinney 2012). But even if Palmese's justification under § 140.10 had been insufficient, the Second Circuit has made clear that "when

[7] Plaintiff later claimed that she had "been [t]here for thirty days," but only after hearing Heslin say she had not been. (Palmese BWC II at 24:45-24:50.) I note that Plaintiff has been inconsistent when it comes to detailing when she occupied the home. In her deposition she stated that she had lived there continuously from birth to the date of her arrest. (Adams Dep. at 43:16-44:15.) At the scene, however, she told the officers that she had been at the home for three weeks. (Palmese BWC II at 24:10.) Inconsistency in the evidence around Plaintiff's residency at the home was also a feature of her state court proceedings. See 26th Street Holding LLC v. Adams et al., No. LT-303641-21/QU (Queens Cnty. Civ. Ct. Sept. 9, 2021), Docket Entry # 10 at 5 ("Problematic to Adams' case was that her witnesses contradicted each other in a very important detail, whether Adams lived on the premises.").

faced with a claim for false arrest, we focus on the validity of the arrest, and not the validity of each charge," meaning that if "probable cause existed to arrest a defendant" it does not matter whether that probable cause aligns exactly with the elements of the charged crime. Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). Even if Palmese did not have probable cause to arrest Adams for trespass in the third degree (which he did), he would have had probable cause to arrest her for trespass pursuant to New York Penal Law § 140.05. Palmese observed Adams refusing to leave property that he understood her as having no right to occupy, providing a separate ground for probable cause to arrest. See Davis, 840 F. App'x at 634 (the officer's "personal observations thus furnished him with probable cause to arrest [Defendant] for trespassing" pursuant to § 140.05); see also N.Y. Pen. L. §§ 140.05 ("A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."), 140.00(5) ("A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so.") (McKinney 2012).

Adams also asserts that probable cause is defeated by Palmese's acknowledgment that Adams "believed she had a right to be present" at the home. (D.E. # 117 at 5 (quoting Palmese Dep. at 47:18-23).) "Under New York law, this belief might have provided [Adams] a defense against the trespass charge at trial," but "it has no bearing on whether [Palmese] had probable cause to arrest [her] for trespassing." Davis, 840 F. App'x at 634. "An arresting officer has no duty to investigate exculpatory defenses, or to assess the credibility of claims regarding exculpatory defenses." Carpenter v. City of New York, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013). It is true that "under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause." Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003). But "[o]nce an officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."

Panetta, 460 F.3d at 396. It does not matter, therefore, that Palmese understood that Adams believed she had a right to be on the property. See Finigan v. Marshall, 574 F.3d 57, 60, 63 (2d Cir. 2009) (officer's knowledge of woman's belief that she had a right to enter the property did not undermine probable cause because officer did not need to "negate any defense" to a crime he had reason to believe had occurred). And even if it did, Palmese had reason to doubt that Adams's belief was held in good faith. See Carpenter, 984 F. Supp. 2d at 265 ("An individual accused of criminal trespass may raise as a defense that [s]he 'honestly believed that [s]he was licensed or privileged to enter.'" (quoting People v. Basch, 365 N.Y.S.2d 836, 840 (App. Div. 1975))). Palmese's investigation persuaded him—correctly—that Adams did not own the property and had no right to be there. Nothing she presented to him on the scene justified a good faith belief in that right. Her assertion of that belief, by itself, was insufficient. See People v. Tuchinsky, 419 N.Y.S.3d 843, 845 (Dist. Ct. 1979) (defense does not apply to people who "clos[e] [their] eyes to reality and stubbornly assert[] an 'honest belief' to remain where [they are] not privileged to be").

Third, Adams argues that, even if there was probable cause to arrest her when Palmese first went to the home, it "dissipated based on new information given to officers on the day of the arrest." (Pl. Mot. at 12 (cleaned up).) By this she means that once Palmese learned "that the ownership of the house was currently being litigated in court and that the matter had not been resolved," he ceased to have probable cause to arrest her for trespass. (Id.)

Adams makes a policy argument that when there is an ongoing dispute over property rights, police officers lack probable cause to arrest a litigant for trespass before that dispute is resolved in court because to hold otherwise would be to usurp the power of the courts to resolve these disputes. (Id. at 14.) In some cases, that argument might have a superficial appeal, but not in this one. First, I note that the proceeding at issue here was an illegal lockout petition brought by Basalmashhadi

against Adams to enforce his rights. It was not initiated by Adams. See 26th Street Holding LLC, No. LT-303641-21/QU, Docket Entry # 1 (June 10, 2021). It was not until after her arrest that Adams counterclaimed with her own motion charging Basalmashhadi with an illegal lockout. See id., Docket Entry # 6 (June 28, 2021). This was not a typical landlord-tenant dispute over an eviction. Sadly for Adams, the undisputed facts were that she lost the home in foreclosure, that it was purchased by 26th Street Holding LLC, and that 26th Street Holding LLC, not Adams, held the deed. On those facts, a finding of probable cause to arrest does not undermine the role of the courts in housing disputes.

I further note that to adopt Adams's position raises policy concerns of its own. To hold that the mere existence of a lawsuit over property ties the hands of the police and precludes a trespass arrest could result in the inability of police to prevent disputes from escalating into dangerous encounters harmful both to the parties and to the community.

Adams argues that her informing Palmese of the litigation obligated Palmese to conduct "a further inquiry" into the ownership of the home but, as noted above, that had been done. (Pl. Mot. at 12 (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996).) Palmese conducted a thorough investigation into the ownership of the home before ever interacting with Adams. He spoke with the victim of the alleged crime—Basalmashhadi—and verified his documentation. When he was handed new evidence by Adams at the scene, he reviewed it, going so far as to make a phone call to gather additional information. Even when verified, the court papers did not "corroborate" Adams's claims. I therefore cannot say that Palmese "fail[ed] to make a further inquiry when a reasonable person would have done so." Soley v. Cnty of Nassau, 18-CV-277 (ARR) (SB), 2024 WL 1494383, at *8 (E.D.N.Y. Mar. 4, 2024) (quoting Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010)).

***

In sum, Palmese arrived at the home after investigating the complaint of a property owner "confirm[ing] … that [Adams] [did] not have permission or authority to be at the property," which is typically sufficient to give the officer "probable cause to arrest that person for criminal trespass." Watt, 2026 WL 734482, at *8 (citing Walston, 745 F. App'x at 66). He conducted an independent investigation to verify the property owner's claims. At the scene, he was presented with additional information, which he took steps to "further investigat[e]." McCrae, 759 F. Supp. 3d at 388. "[C]onfronted with different versions of events, [Palmese was] not charged with deciding who [was] ultimately right; his job [was] to determine whether there was probable cause to arrest." Watt, 2026 WL 734482, at *8 (citation omitted). He determined that there was, and he was correct. As "'[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest' brought under Section 1983," I therefore grant Palmese's motion for summary judgment and deny Adams's motion for summary judgment. Mitchell v. City of New York, 841 F.3d 72, 77 (2d Cir. 2016) (quoting Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007).

C. Palmese is Entitled to Qualified Immunity

A finding that Palmese had probable cause to arrest Adams is also a finding that he is entitled to qualified immunity because qualified immunity requires only "arguable" probable cause and the test is "more favorable" than the test for probable cause. Escalera, 361 F.3d at 743. It was "objectively reasonable" given Palmese's receipt of a complaint from the victim of a crime, his verification of that victim's claim, and his personal observations at the scene, for Palmese to "believe that probable cause existed." Id. He is therefore entitled to qualified immunity, and for

this independent reason I grant his motion for summary judgment and deny Adams's motion for summary judgment.

D. Probable Cause Sheilds Heslin from Liability

"Under the collective or imputed knowledge doctrine, an arrest . . . is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause . . . but sufficient information to justify the arrest . . . was known by other law enforcement officials initiating or involved with the investigation." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001) (citations omitted). Heslin was present on the scene the day of Adams's arrest and was the one to place Adams in handcuffs. (D.E. # 113-5 ("Heslin Dep.") at 15:4-15.) But she did so pursuant to Palmese's direction. (See Palmese Dep. at 48:11-13 (it was Palmese's decision and "only [Palmese's] decision" to arrest Adams; Heslin Dep. at 15:13-15 (the decision to arrest Adams "was made by Officer Palmese").) Because Palmese had probable cause to initiate Adams's arrest, Heslin is shielded from liability "for false arrest [because she] relie[d] on a fellow officer who vouche[d] for probable cause." Golphin v. City of New York, No. 09 Civ. 1015 (BSJ), 2011 WL 4375679, at *2 (S.D.N.Y. Sept. 19, 2011) (citation omitted).

The same is true for Adams's failure-to-intervene claim. (D.E. # 64 at ¶¶ 49-52.) "[W]here probable cause for [an] arrest exist[s], there [is] no duty to intervene to prevent the arrest." Batson-Kirk v. City of New York, No. 07-CV-1950 (KAM) (JMA), 2009 WL 1505707, at *8 (E.D.N.Y. May 28, 2009) (citation omitted). Because Palmese had probable cause to arrest Adams, Heslin had no duty to intervene, and that claim "fails as a matter of law." Id.

Heslin's motion for summary judgment is therefore granted.

## CONCLUSION

Because I find that Palmese and Heslin had probable cause, or at least arguable probable cause, to arrest Adams for trespass, I GRANT their motion for summary judgment on Adams's false arrest claims. I GRANT Heslin's motion for summary judgment on the failure to intervene claim. I DENY Adams's motion for summary judgment.

SO ORDERED.

Dated: July 30, 2026
Brooklyn, New York

/s Carol Bagley Amon

Carol Bagley Amon
United States District Judge